### DADE COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY v. STATE OF FLORIDA, et al.

No. 78-20685(23).

Circuit Court, Dade County.

January 19, 1979.

Stuart L. Simon, County Attorney, Vicki Jay, Assistant County Attorney, for the plaintiff.

Janet Reno, State Attorney, Milton Robbins, Assistant State Attorney, for the defendants.

DAN SATIN, Circuit Judge.

*Judgment:* This cause coming on to be heard on the 18th day of January, 1979, at the hour of 4 o'clock P. M. of said day, and continued on the 19th day of January 1979 at 9 o'clock A. M., in the Dade County Courthouse in the city of Miami, in the county of Dade in the eleventh judicial circuit of Florida, upon the complaint of the Dade County Industrial Development Authority (herein called the "issuer") for the validation of $1,310,000 Industrial Development Revenue Bonds (Carolina Freight Carriers Corporation Project), Series 1978 (herein called the "bonds"), of said issuer, pursuant to a notice and order to show cause heretofore issued by this court requiring the defendants to show cause at said time and place why the bonds and the proceedings of the board of commissioners of the issuer in connection with the issuance of said bonds should not be validated as was prayed in said complaint, and it appearing that copies of said notice and order and of said complaint were served upon the state attorney for the eleventh judicial circuit of Florida, as is required by law, that said notice and order was published as is required by law, that said state attorney has filed an answer as required by law, that no one except said state attorney and said plaintiff has made any appearance or filed any pleading or paper of any kind whatever in said matter, and that the court has jurisdiction of this cause and of the subject matter hereof and of the parties hereto, and evidence having been intro-

duced and the cause submitted for consideration and decision, the court, having heard and determined all of the questions of law and of fact in this cause, *finds the facts* as follows —

(a)  All of the material allegations in said complaint for validation are true, and the issuance of $1,310,000 Industrial Development Revenue Bonds (Carolina Freight Carriers Corporation Project), Series 1978, of said issuer has been duly authorized.

(b)  The issuer was created by Part III of Chapter 159, Florida Statutes (herein called the "Act"), as a body corporate and politic and a public instrumentality of the county of Dade, Florida (herein called the "county").

(c)  The board of county commissioners of Dade County (herein called the "board") adopted on March 21, 1978 an ordinance entitled —

> *Ordinance declaring a need for an Industrial Development Authority in Dade County; designating the members of the authority; providing for severability; providing for inclusion in the Code; and providing an effective date.*

which ordinance (herein called the "enabling ordinance"), by declaring a need for an industrial development authority in the county, had the effect under the Act of authorizing the issuer to transact business and exercise its powers under the Act.

(d)  the Issuer was created for the purpose of financing and refinancing capital projects including industrial and manufacturing plants and air, water and other pollution and waste control facilities, together with appurtenant facilities, for the complete operation thereof for the purpose of fostering the industrial and business development of the county.

(e)  The constitution of the state of Florida provides, in Section 10 of Article 7, that neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person, but that this shall not prohibit laws authorizing the issuance and sale by any county, municipality, special district or other local governmental body of revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States when the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects.

(f) Paragraph (1) of Section 103(b) of the Internal Revenue Code of 1954, as amended (herein called the "Code"), in effect makes the interest on industrial development bonds (as therein defined) subject to federal income taxes, but paragraph (6)(A) of Section 103(b) of the Code provides that said paragraph (1) shall not apply to any obligation which is issued as part of an issue of an aggregate principal amount of $1,000,000 or less when substantially all of the proceeds thereof are to be used for the acquisition, construction, reconstruction, or improvement of land or property of a character subject to the allowance for depreciation.

Paragraph(6)(B) of Section 103(b) of the Code provides that if the proceeds of two or more issues of obligations described in paragraph (6)(A) of Section 103(b) of the Code (whether or not the issuer of each such issue is the same) are or will be used primarily with respect to facilities located in the same incorporated municipality or located in the same county (but not in any incorporated municipality), and the principal user of such facilities is or will be the same person or two or more related persons, then in determining the aggregate principal amount of any issue there shall be taken into account the principal amount of obligations issued under all prior such issues and outstanding at the time of such later issue.

Paragraph (6)(D) of Section 103(b) of the Code provides that at the election of the issuer, "$10,000,000" may be substituted for "$1,000,000" in paragraph (6)(A) mentioned above, provided that in determining the face amount of the issue there shall also be taken into account the outstanding principal amount of obligations described in paragraph (6)(B) mentioned in the next preceding paragraph and the aggregate amount of "capital expenditures' '(financed other times from the proceeds of the bonds) with respect to the facilities mentioned in the next preceding paragraph.

(g) The issuer, as required by the Act and by Article 7, Section 10 of the Florida Constitution, has determined that the interest on the bonds to be issued by the issuer to pay the cost of the acquisition, construction, equipping and installation of the project will be exempt from income taxes under existing laws of the United States based on (i) the representations of the company made in the sale agreement (hereinafter mentioned) that (A) all of the proceeds of the bonds will be used to finance the acquisition, construction, or improvement of land or property of a character subject to the allowance for depreciation, (B) that there will not be on the date of issue of the bonds any outstanding obligations of a prior issue the proceeds of which are required to be taken into account pursuant to paragraph (6)(B) of Section 103(b) of the Code (as

described in paragraph (f) of this judgment) and (C) that the sum of "capital expenditures" within the meaning of Section 103(b)(6)(D) of the Code (as described in paragraph (f) of this judgment) to be made other than from the proceeds of the bonds will not on the date of issue of the bonds exceed $500,000 and (ii) a written opinion of the bond counsel to the issuer, to be dated the date of issue of the bonds, that the interest on the bonds is exempt from federal income tax.

(h)  The Issuer has made the necessary arrangements with Carolina Freight Carriers Corporation, a corporation organized and existing under the laws of the state of North Carolina and qualified to do business in the state of Florida (herein called the "company"), for the acquisition, construction, equipping and installation by the issuer of a motor freight terminal facility (herein called the "project"), at 6400 N. W. 74th Avenue, Miami, Florida, in the county, and will be of the character of project permitted by, and accomplish the purposes of, the Act.

(i)  In accordance with the criteria and requirements of the Act and in compliance therewith, the issuer has studied the advantages, facilities, resources, products, attractions, and conditions concerning the county with relationship to the encouragement of industry and business to locate in the county and, with reference to the project and the company, it has further determined in the resolution (hereinafter mentioned) that —

(1)  The project will make a significant contribution to the economic growth of the county, the jurisdiction of the issuer, will provide gainful employment and will serve a' public purpose by advancing the economic prosperity and the general welfare of the state of Florida and its people.

(2)  The project is being sold to a financially responsible corporation which is fully capable and willing to fulfill its obligations under the sale agreement including the obligation to pay the purchase price payments in the amounts and at the times required and the obligation to operate, repair and maintain the project at its own expense,

(3)  The county will be able to cope satisfactorily with the impact of the project and will be able to provide, or cause to be provided when needed, the public facilities, including utilities and public services, that will be necessary for the construction, operation, repair and maintenance of the project and on account of any increases in population or other circumstances resulting therefrom, and

(4)  Adequate provision has been made in the sale agreement for the operation, repair and maintenance of the

project at the expense of the company and in the sale agreement, the guaranty (hereinafter mentioned) and the mortgage (hereinafter mentioned) for the payment by the company of purchase price payments for the project sufficient to pay the principal of and the interest on the bonds.

(j) The issuer has determined that paying the cost of the project will require the authorization and issuance of the bonds of the issuer under the Act, to be payable solely from the revenues and proceeds derived from the issuer's sale of the project, and that the revenues and proceeds to be derived from such sale will be adequate to pay the principal of and premium, if any, and interest on the bonds.

(k) Pursuant to the authority of the Act, the issuer, at a meeting duly called and held on December 20, 1978 passed and adopted a resolution (herein called the "resolution") entitled —

*A resolution authorizing the issuance and sale of $1,310,000 Industrial Development Revenue Bonds (Carolina Freight Carriers Corporation Project), Series 1978, for the purpose of paying the cost of the acquisition, construction, equipping and installation of a capital project consisting of a motor freight terminal facility to be located in Dade County, Florida, pursuant to part III, chapter 159 of the Florida Statutes; providing that such bonds shall not constitute a debt, liability or obligation of Dade County Industrial Development Authority or the State of Florida or any political subdivision thereof but shall be payable solely from the revenues provided therefor; approving and authorizing the execution and delivery of an agreement of sale selling said capital project; approving and authorizing the execution and delivery of a pledge and assignment and a mortgage, and approving the form of a guaranty and indemnification agreement, securing said bonds; approving and authorizing the execution and delivery of a bond purchase agreement providing for the sale of said bonds to the purchaser; making a tax election with respect to said bonds; and authorizing proceedings validating said bonds —*

which resolution provides for the issuance of the bonds of the issuer in the aggregate principal amount of $1,310,000 to be designated "Dade County Industrial Development Authority Industrial Development Revenue Bonds (Carolina Freight Carriers Corporation Project), Series 1978," for the purpose of paying the cost of the acquisition, construction equipping and installation of the project.

The resolution further provides for the execution and delivery of a bond purchase agreement (herein called the "bond purchase agreement"), substantially in the form therein authorized, with Prudential Property and Casualty Insurance Company, an insurance company organized under the laws of the state of New Jersey and designated by the company to the issuer as the initial purchaser of the bonds (herein called the "purchaser"), whereby the issuer will agree to sell to the purchaser, and the purchaser will agree to buy from the issuer, the bonds for a purchase price equal to 100% of the principal amount thereof, all on the basis of the representations and the terms and conditions set forth therein.

The resolution also provides for the execution and delivery of the sale agreement, substantially in the form authorized in the resolution, with the company pursuant to which the issuer will agree to sell to the company, and the company will agree to purchase from the issuer, all of the issuer's right, title and interest in the project, subject to permitted encumbrances (as defined in the sale agreement) to which the company has consented, and pursuant to which the company will agree to make purchase price payments in amounts and on the dates required for the issuer to cause payment to be made to the holders of the bonds of the principal of and redemption premium, if any, and interest on the bonds, whether at maturity, upon redemption or otherwise.

The resolution also provides for the execution and delivery of the pledge and assignment (herein called the "assignment"), substantially in the form authorized in the resolution, by and between the issuer and the purchaser, pursuant to which the issuer will pledge and assign to the purchaser its rights under the sale agreement, including the purchase price payments payable by the company thereunder (except the issuer's rights to indemnification and payment of expenses), as security for the bonds.

The resolution states that the company will enter into a guaranty and indemnification agreement (herein called the "guaranty") with the purchaser pursuant to which the company will unconditionally guarantee the punctual payment when due of the principal of and redemption premium, if any, and interest on the bonds and agree to indemnify the holders of the bonds against the invalidity of, and taxability of the interest on, the bonds. The resolution also provides for the execution and delivery of the mortgage (herein called the "mortgage"), substantially in the form authorized in the resolution, pursuant to which, as additional security for the bonds, the issuer will grant a first mortgage lien on the project land and the building (being those portions of the project which constitute real property and fixtures), subject only to permitted encumbrances (as therein defined), to the purchaser.

As *Conclusions of Law* from the foreging facts, the court finds —

1. The Act is a valid statute of the state of Florida, enabling ordinance was validly adopted by the board, the authority has been duly created and is validly existing under the Act, and the Act constitutes sufficient and valid authority for the issuance of not exceeding $1,310,000 Dade County Industrial Development Authority Industrial Development Revenue Bonds (Carolina Freight Carriers Corporation), Series 1978, described herein for the purposes stated.

2. The project is a capital project for an industrial plant within the meaning of Article 7, Section 10 of the constitution of the state of Florida and a project within the meaning of the Act.

3. The bonds when issued as provided by the resolution and as authorized by the Act will be valid and binding obligations of the issuer in accordance with their terms, and the sale agreement, the assignment, the bond purchase agreement and the mortgage when executed substantially in the forms attached to the complaint as "Exhibit B," "Exhibit C," "Exhibit D" and "Exhibit F," respectively, will be valid and binding documents and agreements of the issuer enforceable in accordance with their respective terms.

4. The bonds and the redemption premium, if any, and interest thereon will not be deemed to constitute a debt, liability or obligation of the issuer or of the state of Florida or of any political subdivision thereof, or a pledge of the faith and credit of the issuer or the county or of the state of Florida or of any political subdivision thereof, but shall be payable solely from the revenues and proceeds provided therefor and the issuer is not obligated to pay the bonds or the premium, if any, or interest thereon except from the revenues and proceeds pledged therefor and neither the faith and credit nor the taxing power of the issuer or the county or of the state of Florida or of any political subdivision therof is pledged to the payment of the principal of or premium, if any, or interest on the bonds.

5. The determination by the issuer as recited in the resolution based on the representation and opinion mentioned in paragraph (g) above that the interest on the bonds will be exempt from income taxes under existing laws of the United States constitutes a compliance with the provisions of Section 10 of Article 7 of the Florida Constitution and the Act. Such determination is sufficient to permit this court to determine that the bonds will be valid and binding obligations of the issuer authorized to be issued under and pursuant to the provisions of the Act and said Section 10 of Article 7 and to validate the bonds. The validity of the bonds shall not be affected by any determination subsequent to their issuance that the interest on such bonds was not either at the time of such issuance or at any time thereafter exempt from federal income tax.

6. All of the terms and provisions of the resolution, the sale agreement, the assignment, the bond purchase agreement and the mortgage are in accordance with law and are fully authorized by the constitution and laws of the state of Florida, and are in all respects valid.

7. The complaint for validation filed in this proceeding fully complies with all of the provisions and requirements of Chapter 75, Florida Statutes, applicable thereto and is sufficient to authorize the validation of the bonds and the proceedings therefor, including the resolution, and all of the provisions thereof.

8. This court has jurisdiction to hear this cause and to render a decision herein, including all of the foregoing findings of fact and conclusions of law, and is fully authorized by law to validate the bonds and the proceedings therefor.

It is therefore ordered and adjudged that $1,310,000 Industrial Development Revenue Bonds (Carolina Freight Carriers Corporation Project), Series 1978, of the issuer, hereinafter more particularly described, and the proceedings therefor, including the resolution, the sale agreement, the assignment, the bond purchase agreement and the mortgage, be and the same are hereby validated.

The bonds shall be designated "Industrial Development Revenue Bonds (Carolina Freight Carriers Corporation Project), Series 1978," shall be dated, shall bear interest on the unpaid principal amount thereof at the rate of 7.50% per annum, such interest to be payable quarterly on January 1, April 1, July 1 and October 1 of each year, with interest on overdue installments at the rate of 8.50% per annum, shall be stated to mature on April 1, 1995, and shall be subject to redemption at such times and prices and shall have such mandatory prepayment requirements as set forth in the form of bond attached as Exhibit A to the bond purchase agreement. The proceeds of the bonds herein authorized shall be applied to the payment of the cost of acquisition, construction, equiping and installation of the project, including reimbursement to the company for any cost of the project heretofore or hereafter paid by the company from its own funds.

The bonds shall be substantially in the form set forth in the form of bond attached as Exhibit A to the bond purchase agreement with such appropriate variations, omissions or insertions as are permitted or required by the bond purchase agreement, and may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or any usage or requirement of law with respect thereto.

The bonds shall be registered as to both principal and interest in the name or nominee of the owner thereof shown on the issuer's registration books.

All sums, including principal, interest and redemption premium on the bonds shall be payable by check or draft mailed to the persons shown on the authority's bond registration books to be the registered owners thereof, except that final payment of principal on each of the bonds shall be made only upon presentation and surrender thereof and except that the purchaser and any institutional investor of recognized standing shall be entitled to the home office payment provisions of Section 8 of the bond purchase agreement.

Upon surrender to the bond registrar appointed by the issuer together with an assignment satisfactory to the bond registrar, the registration of the bonds may be transferred on the issuer's bond registration books and bonds may be exchanged for other bonds in each case in any denominations not less than the lesser of (i) $50,000 or (ii) the principal amount of the bond surrendered in such registration of transfer or exchange.

If at any time the purchaser shall so request of the authority, the authority will, if it may lawfully do so and if it shall have received the approval of counsel chosen by it and pursuant to such terms and conditions as may be imposed by the issuer or such counsel, execute and deliver to a bank or trust company organized under the laws of the state of Florida or organized under the laws of the United States of America and having its principal office in the state of Florida, as trustee, satisfactory to the purchaser, the authority and the company, and having a capital and surplus of at least $10,000,000 (if there be such an institution willing, qualified and able to accept the trust upon reasonable or customary terms), an indenture of trust (hereinafter called the "indenture"), providing for the exchange, and will authorize the exchange thereunder as herein provided, of a principal amount of new industrial development revenue bonds of the authority (herein called the "new bonds"), equal in aggregate principal amount to the aggregate principal amount of such bonds outstanding and unpaid at the time of such authorization, bearing interest at the same rate as such outstanding bonds and in all other respects substantially similar to, and having substantially all the rights and privileges carried by, the bonds; provided, however, that the indenture may contain provisions permitting, at the option of the holder or holders of 66 2/3% or more of the principal amount of the then outstanding bonds, the appointment of a bank or trust company organized under the laws

of a jurisdiction other than the state of Florida or the United States of America and/or having its principal place of business in a jurisdiction other than the state of Florida, as paying agent for the payment of principal of, premium, if any, and interest on the bonds.

The indenture and the new bonds to be issued thereunder would, insofar as may be appropriate, respectively embody the substance of all covenants, conditions and provisions of the bond purchase agreement and the bonds, together with such other provisions as may be desirable (not inconsistent with the provisions of the bond purchase agreement, the resolution and the bonds) and as are usually contained in indentures of similar issuers providing for bonds of comparable aggregate principal amount and maturity, or are usually contained in such bonds. The indenture and the new bonds would be, respectively, in form and substance satisfactory to the purchaser and independent counsel and in such form as may be necessary to comply with any applicable recording or other statutes and with any rules or regulations thereunder and with the decisions of federal and state courts. The new bonds would be issuable in definitive form as coupon bearer bonds or as registered bonds without coupons in denominations of $5,000 or any multiple or multiples thereof. New bonds might also be issuable in temporary form.

The bonds and the redemption premium, if any, and interest thereon will not be deemed to constitute a debt, liability or obligation of the issuer or of the state of Florida or of any political subdivision thereof, or a pledge of the faith and credit of the issuer or the county or of the state of Florida or of any political subdivision thereof, but shall be payable solely from the revenues and proceeds provided therefor and the issuer is not obligated to pay the bonds or the premium, if any, or interest thereon except from the revenues and proceeds pledged therefor and neither the faith and credit nor the taxing power of the issuer or the county or of the state of Florida or of any political subdivision thereof is pledged to the payment of the principal of or premium, if any, or interest on the bonds.

The bonds will be executed by the chairman or vice chairman and the official seal of the issuer shall be impressed thereon and attested by the secretary or an assistant secretary of the issuer. The bonds and the certificate of authentication by the company under the bond purchase agreement, the statement of validation and the provisions for registration to be endorsed on the bonds will be, respectively, substantially in the forms set forth in the bond purchase agreement.

.There shall be stamped or written on the back of each of the bonds a statement in substantially the following form —

*Statement of Validation*

This Bond is one of a series of Bonds which were validated by judgment of the Circuit Court of Dade County, rendered on January 19, 1979.

provided, however, that should an appeal be taken from this judgment within the period of thirty days, then and in that event the bonds shall not be delivered to the purchaser unless and until a mandate of the Supreme Court of Florida affirming this judgment shall have been recorded in the office of the clerk of this court.